UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-21437-CIV-ROSENBAUM/SELTZER

ROLEX WATCH U.S.A., INC.,

    Plaintiff,

v.

RAINBOW JEWELRY, INC.,

    Defendant.

_____/

**ORDER GRANTING
PLAINTIFF'S MOTION TO DISMISS COUNTERCLAIM WITH PREJUDICE**

This matter is before the Court on Plaintiff's Motion to Dismiss Counterclaim [D.E. No. 11]. The Court has carefully reviewed Plaintiff's Motion, all supporting and opposing filings and the case file. For the reasons that follow, the Court **GRANTS** Plaintiff's Motion to Dismiss with prejudice.

**I. Background**

Plaintiff Rolex Watch U.S.A., Inc. ("Rolex"), is the exclusive United States distributor of Rolex watches — a brand of watch that is famous for its quality and exclusivity. *See* Compl. ¶ 8 [D.E. No. 1], filed April 17, 2012. Like many other distributors of fine goods, Rolex goes to great lengths to protect the value of the brand it distributes, and this sometimes includes filing suit against those that use the Rolex trademark without Rolex's permission. This case fits the familiar mold.

In its Complaint against Defendant Rainbow Jewelry, Inc. ("Rainbow"), Rolex contends that Rainbow's unauthorized use of the Rolex trademark on the awning of its jewelry store infringes the

Rolex trademark. *See* Compl. ¶ 25. Rainbow insists that it has done nothing improper and has advanced a Counterclaim against Rolex under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") to recover for the alleged injuries it has sustained in having to defend against Rolex's trademark infringement suit. *See* Def.'s Countercl. ¶¶ 5-9 [D.E. No. 7], filed June 7, 2012. Rolex, in turn, has moved to dismiss Rainbow's Counterclaim. *See* Pl.'s Mot. to Dismiss [D.E. No. 11]. Whether Rolex is correct on the merits of its trademark infringement suit is a question the Court will consider on another day. Before the Court now is only the narrow issue of whether Rainbow's Counterclaim can survive Rolex's Motion to Dismiss. The Court holds that it cannot.

## II.  Legal Standard

When entertaining a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court assumes that all of the factual allegations in the complaint are true and construes them in the light most favorable to the plaintiff. *See Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010) (citation omitted). A plaintiff must, however, present "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[C]onclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." *Bell v. J.B. Hunt Transp., Inc.*, 427 F. App'x 705, 707 (11th Cir. 2011) (per curiam) (citing *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1263 (11th Cir.2004)).

### III.  Discussion

First, the Court considers whether Rolex is immune from having to defend against the Counterclaim.  Rolex contends that this is indeed the case and advances two alternative sources for this immunity: Florida's litigation privilege and the *Noerr-Pennington* doctrine.

Florida's litigation privilege cloaks with absolute immunity "any act occurring during the course of a judicial proceeding . . . so long as the act has some relation to the proceeding." *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 383 (Fla. 2007) (internal quotation marks omitted) (quoting *Levin, Middlebrooks, Mabie, Thomas, Mayes Mitchell, P.A. v. United States Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994)).  Rolex maintains that the act of filing a lawsuit is by definition an act that occurs during the course of a judicial proceeding and thus fits comfortably within the category of conduct that the privilege is designed to protect.  *See* Pl.'s Mot. to Dimiss 3-4.

The Court agrees.  The decision to file a lawsuit "clearly relates to a judicial proceeding and therefore cannot form the basis for a state-law claim in federal court."  *Atico Int'l USA, Inc. v. Luv N' Care, Ltd.*, No. 09-60397-CIV, 2009 WL 2589148, at *3 n.5 (S.D. Fla. Aug. 19, 2009) (citations omitted); *see also Echevarria*, 950 So. 2d at 384 ("Just as participants in litigation must be free to engage in unhindered communication, so too must those participants be free to use their best judgment in prosecuting . . . a lawsuit without fear of having to defend their actions in a subsequent civil action for misconduct.") (citation & internal quotation marks omitted).  This, of course, is not to say that a litigant has no recourse against an opposing party who abuses the judicial process, as a number of mechanisms exist to prevent baseless litigation --- for example, "the discipline of the courts, the bar association, and the state." *LatAm Invs., LLC v. Holland & Knight, LLP*, 88 So. 3d

240, 243 (Fla. 3d DCA 2011) (internal quotation marks omitted) (quoting *Levin*, 639 So. 2d at 608). Filing a lawsuit under the FDUTPA, however, is not one of them.

Rainbow, notably, does not disagree that Florida's litigation privilege immunizes Rolex's decision to file its trademark infringement lawsuit. Instead, Rainbow posits that its Counterclaim seeks to hold Rolex liable not just for its decision to file suit, but also for sending a flood of "threatening" cease-and-desist letters in the years prior to filing suit. *See* Def.'s Mem. of Law in Opp'n to Pl.'s Mot. to Dismiss 4-5 [D.E. No. 14], filed July 13, 2012 ("Response"). This distinction — between litigation and pre-litigation conduct — Rainbow contends, removes this case from the ambit of Florida's litigation privilege. *See* Resp. 5. Rainbow's argument is not without merit; and indeed, the Middle District of Florida has accepted it. *See Trent v. Mortg. Elec. Registration Sys., Inc.*, 618 F. Supp. 2d 1356, 1360 (M.D. Fla. 2007) (unpublished) (declining to extend the litigation privilege to "pre-suit communications" where such communications were not required by law); *cf. Atico Int'l*, 2009 WL 2589148, at *3 n.5 (noting that "[n]either the Florida Supreme Court, nor the Eleventh Circuit Court of Appeals, has decided whether Florida's litigation privilege bars actions premised upon a pre-suit communication from counsel that asserts rights and threatens litigation") (citations omitted). But whether and to what extent the litigation privilege immunizes pre-litigation conduct is relevant here only if Rainbow has in fact pled that it seeks to hold Rolex liable for its pre-litigation communications. Here, Rainbow has not.

A fair reading of Rainbow's Counterclaim demonstrates that the language it used to describe the conduct for which it seeks to hold Rolex liable does not embrace Rolex's pre-litigation communications. The Counterclaim instead makes readily apparent that the conduct Rainbow believes "constitutes an unfair business practice," Countercl. ¶ 8, refers to Rolex's having "brought

this action," *id.* at ¶ 7, rather than its having sent cease-and-desist letters — conduct that Rainbow's Counterclaim does not mention.  Because the Counterclaim seeks to hold Rolex liable only for making good on its threat to file a trademark infringement lawsuit, Florida's litigation privilege shields Rolex from having to defend against the Counterclaim.

Nor can Rainbow can successfully amend its Counterclaim to include Rolex's pre-suit conduct and thereby state a viable cause of action against Rolex under FDUTPA.  Both the United States Supreme Court and the Eleventh Circuit Court of Appeals have made clear that an entity is immune from suit for taking — or even threatening — legal action that has an anticompetitive effect under the *Noerr-Pennington* doctrine.[1]  The doctrine, which, in part, grows out of a concern to protect the First Amendment right to petition, allows litigants to "use the channels and procedures of state and federal . . . courts to advocate their causes and points of view respecting resolution of their business and economic interests vis-à-vis their competitors" without fear of falling afoul of federal or state anti-competition laws.  *McGuire Oil Co. v. Mapco, Inc.*, 958 F.2d 1552, 1559 (11th Cir. 1992) (quoting *Cal. Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510-11 (1972)).  The Eleventh Circuit's decision in *McGuire Oil Co. v. Mapco, Inc.*, is illustrative of the doctrine's application.

There, a group of Alabama petroleum wholesalers threatened to sue — and ultimately did sue — an out-of-state petroleum producer for selling gasoline below cost, in alleged violation of an

---

[1] The *Noerr-Pennington* doctrine takes its name from *United Mine Workers v. Pennington*, 381 U.S. 657 (1965), and *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961).  *See Valley Drug Co. v. Geneva Pharms., Inc.*, 344 F.3d 1294, 1302 n.14 (11th Cir. 2003).  *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508 (1972), extended the *Noerr-Pennington* doctrine to attempts to petition administrative agencies and the judiciary.  *See TEC Cogeneration, Inc. v. Fla. Power & Light Co.*, 76 F.3d 1560, 1571 n.28 (11th Cir. 1996).

Alabama statute. *See id.* at 1554-55. The out-of-state producer counterclaimed and alleged that the plaintiffs' litigation and pre-litigation conduct "constituted an anticompetitive price-fixing conspiracy" in violation of federal antitrust laws and Alabama's Unfair Trade Practices Act. *See id.* at 1557. The Eleventh Circuit disagreed, explaining that it would not construe Alabama's Unfair Trade Practices Act "to treat as unfair trade practices concerted activity that is constitutionally protected." *Id.* at 1562. In so doing, the panel reaffirmed that even litigation that is advanced with the purpose of stifling competition cannot serve as the basis of an antitrust or unfair trade practices lawsuit unless the suit is a sham. *See id.* at 1560 ("it is axiomatic that actions taken with an anti-competitive purpose or intent remain insulated from antitrust liability under the *Noerr-Pennington* doctrine").

As in *McGuire*, Rainbow seeks to hold Rolex liable for using the machinery of the courts to advance an anti-competitive end. The Eleventh Circuit, however, has foreclosed that line of argument unless Rainbow can carry its burden and demonstrate that Rolex's suit is a sham. But to do that, Rainbow needs to show that Rolex's suit is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Atico Int'l*, 2009 WL 2589148, at *3 (quoting *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indust.*, 508 U.S. 49, 57, 60 (1993)). Thus, so long as Rolex brought "[its] lawsuit against [Rainbow] to win, or [] [its] goal [is] . . . a favorable decision from the [C]ourt[]," *McGuire*, 958 F.2d at 1560 (citation & footnote call number omitted), Rolex is immune from having to defend against Rainbow's Counterclaim.

Viewing the Counterclaim in the light most favorable to Rainbow, the Court cannot conclude that Rolex's trademark infringement lawsuit is a sham. To the contrary, it seems readily apparent that Rolex is advancing the underlying suit against Rainbow, at least in part, to protect its trademark,

not merely to interfere with Rainbow's business affairs. *Cf. McGuire*, 958 F.2d at 1559 (the "sham" exception to the *Noerr-Pennington* doctrine extends to "situations in which a publicity campaign, ostensibly directed toward influencing government action, is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor") (quoting *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 144 (1961)). Rolex's position is that Rainbow's use of Rolex's trademark on its awning will cause the public to believe that Rolex is endorsing or is associated with Rainbow's products, and thus Rainbow is infringing on its trademark. *See* Compl. ¶¶ 41-43. Rainbow, in contrast, insists that its use of Rolex's trademark does not confuse customers as to the source of its products or whether Rolex is affiliated with Rainbow's jewelry store, and thus it cannot be liable for trademark infringement. *See* Countercl. ¶ 6. Rainbow's affirmative defense may prove to be a winner on the merits, but that does not inexorably lead to the conclusion that Rolex's lawsuit is a sham. Far from it, it appears both parties have credible arguments as to why they will succeed on the merits, thus rendering inapplicable the "sham" exception to the *Noerr-Pennington* doctrine.[2]

## IV.  Conclusion

For the foregoing reasons, Plaintiff's Motion to Dismiss Counterclaim [D.E. No. 11] is **GRANTED**. It is hereby **ORDERED and ADJUDGED** that the above-styled case is **DISMISSED**

---

[2] Rolex also advances the contention that Rainbow has failed to state a claim under the FDUTPA. *See* Pl.'s Mot. to Dismiss 5-8. The Court need not, however, reach that issue, as Florida's litigation privilege and the *Noerr-Pennington* doctrine immunize Rolex from having to defend against Rainbow's Counterclaim.

**WITH PREJUDICE**.[3]

**DONE** and **ORDERED** at Fort Lauderdale, Florida, this 19th of September 2012.

_____
ROBIN S. ROSENBAUM
United States District Judge

Copies:    Honorable Barry S. Seltzer
           Counsel of record

---

[3] The Court reserves ruling on Rolex's request for an award of attorneys' fees, see Pl.'s Mot. to Dismiss 7-8, for a later date.